Case 8:22-cv-01812-CJC-KES   Document 23   Filed 12/22/22   Page 1 of 9   Page ID #:343

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| JORGE H. ACOSTA; BYRON LAMONT ADAMS; LIBBY ANN ADAMS; JILL AYAKO ALLAS; TONI LERAYNE ALSTON; RALPH LAMARR BALLEW; ANTHONY EMMETT BLEDSOE; LATESHA MONIQUE BUTTS; JACK CLINTON CARPENTER; AMANDA CHERE CASCELLA; MARTIN CERVANTES; SASMAC CHIN; RACHAEL LOUISE CLARK; MONICA JEAN COLE; MIRNA J. CORNEJO; DOMINIC SALVAS DAVIS; LESLEY ANN DOAN; SALVADOR JOSE ENRIQUEZ; DANA DENISE EPPS; ANISSA S. EVENES; MARQUES DREW FERNANDEZ; ALEXIS ANNE FLEMING; PHELIA MAY GAINES; CHARLES CARDENAS GARCIA; JUANITA G. GARNER; MARIA MENDOZA GUTIERREZ; KIMBERLY ANN HAYES; DARLENE PATRICE HUGHES; LINDA KAYE IRVING; TERESA LORETTA ISOM; JAQUEITA D. JACKSON; TINA ANN | Case No.: SACV 22-01812-CJC (KESx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR SANCTIONS [Dkt. 12]** |

-1-

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | **JACKSON; MICHAEL KARL JARDINE; LINDA RENA JOHNSON; PHENG KUY; CHALRES DAVID LADIMIR; ANNALICIA MARIE LARA; ROBERT C. LASLEY; JAMES THOMAS MANGUAL; SEAN P. MARTEL; TAKISHA M. MATTHEWS; KARINA ROCIO MEZA-VAZQUEZ; MARK EVERETT MITRO; DORINE ANTONIA MOONEY; JOSEPH D. NERI; DANIEL J. NOLEN; MARNEE MICHELLE OGRADY; MELISA PADILLA; WILBERT LEE PATRICK; RAMIRO PEREZ JR.; AMY ELIZABETH PIVIN; RAYMOND ELLIOTT PURYEAR; RENEE REYES; DANIEL LLOYD RINGLER; HECTOR J. RIVAS; IRIKA CARREN ROBERTSON; VICTORIA S. ROBINSON; ROSALIND DENISE ROSS; ESMERALDA SANTANA; CHRISTINA B. SEALS; MICHAEL J. SOMOON; LISA MARIE STANSBURY; and ALI DURUPAN VILLA,**<br><br>             **Plaintiffs,**<br><br>     v.<br><br>**HISCOX INSURANCE COMPANY INC. and DOES 1 through 100, inclusive,**<br><br>             **Defendants.** |

# I. INTRODUCTION

Plaintiffs—sixty-three persons proceeding as individuals—joined in filing this action for breach of contract and breach of the implied covenant of good faith and fair dealing against Defendant Hiscox Insurance Company Inc. on August 11, 2022, in the Superior Court of California, County of Orange. (*See* Dkt. 2-1 [Complaint, hereinafter "Compl."].) Hiscox subsequently removed the action to the U.S. District Court for the Central District of California, invoking this Court's diversity jurisdiction. (*See* Dkt. 2 [Defendant's Notice of Removal of Action (28 U.S.C. §1441(b)), hereinafter "Notice"] ¶ 2.) Now before the Court is Plaintiffs' motion to remand the action for failure to meet the amount-in-controversy requirement for jurisdiction. (*See* Dkt. 12 [Plaintiffs' Motion to Remand and Request for Sanctions, Points and Authorities, Declaration in Support Thereof].) For the following reasons, the motion is **DENIED**.

# II. BACKGROUND

As Plaintiffs allege in their complaint, Hiscox provided professional services liability insurance to Midwest Recovery Systems, LLC, a collection agency. (*See* Compl. ¶¶ 7, 9, 13.) In July 2018, Michell Franklin filed a putative class action against Midwest, claiming that it furnished inaccurate or incomplete information about the payday loan debt of Franklin and other California residents to credit agencies in violation of the California Consumer Credit Reporting Agencies Act (the "CCRAA"), Cal. Civ. Code §§ 1785.1–.36 (the "First Action"). (*See id.* ¶¶ 11–12, 16.) Midwest tendered notice of the First Action, but Hiscox denied any duty to defend. (*See id.* ¶ 13.) Hiscox claimed that the "professional services" covered under Midwest's policy were its "services as a collection agent, of non-owned debt, for others for a fee," not any "reporting [of] information to credit reporting agencies." (*Id.* ¶¶ 13–16.) Hiscox further asserted that, in any event, the claim fell under a coverage exclusion. (*See id.* ¶ 17.) By

April 2019, however, Hiscox backtracked; it acknowledged that the policy covered the First Action, agreed to defend Midwest, and directly paid for counsel. (*See id.* ¶¶ 22–23.)

On February 5, 2021, the court in the First Action granted the plaintiff's motion for class certification—but only as to the putative class members who had paid money to Midwest, which did not include Plaintiffs in this action. (*See id.* ¶ 35.) Plaintiffs then served a notice of intent to sue for similar violations of the CCRAA on Midwest, which, in turn, tendered the notice to Hiscox. (*See id.* ¶¶ 39, 42.) On November 12, Hiscox responded to the notice by denying coverage, (*see id.* ¶ 43), and on November 22, Plaintiffs filed an action as individuals (rather than as a class) against Midwest and certain officers for violations of the CCRAA (the "Second Action"). (*See id.* ¶ 44.)

Eventually, Plaintiffs, Midwest, and the officers settled the Second Action and stipulated to the entry of a judgment. (*See id.* ¶ 47.) The stipulation provided that the court would enter a judgment against Midwest and in favor of Plaintiffs for "$8,999 in actual damages for each of the 63 plaintiffs for a total of $566,937" as well as "$500,000 in attorney's fees and court costs." (Dkt. 13-1 Ex. 2 [Stipulation for Entry of Judgment, Covenant Not to Execute, Assignment, hereinafter "Stip."] at 4;[1] *see also* Compl. ¶ 47.)

---

[1] Plaintiffs stated in their complaint that they incorporated the stipulation by reference and had attached it as an exhibit. (*See* Compl. ¶ 47.) According to Hiscox, however, they did not in fact attach it. (*See* Dkt. 13 [Defendant Hiscox Insurance Company Inc.'s Opposition to Plaintiffs' Motion to Remand and Request for Sanctions; Memorandum of Points and Authorities, hereinafter "Opp."] at 4 n.2.) In any event, Hiscox included the stipulation as an exhibit to its opposition, and the stipulation is hereby deemed incorporated. The doctrine of incorporation by reference permits courts to "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document[,] (2) the document is central to the plaintiff's claim[,] and (3) no party questions the authenticity of the document." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted). Plaintiffs certainly refer to the stipulation. (*See* Compl. ¶ 47.) It is also "'integral' to the complaint," *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (9th Cir. 2011) (citation omitted), as Plaintiffs "rel[y] heavily upon its terms and effect." *Id.* (citation omitted). Indeed, the stipulation is the very type of document that is "[t]ypically" deemed "an integral matter"—a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." *Id.* at 811 & n.18 (citation omitted). Finally, Hiscox presented the stipulation, (*see* Stip.), and Plaintiffs have not objected.

Plaintiffs agreed not to execute the judgment against Midwest or the officers, (*see* Stip. at 4; Compl. ¶ 47), and Midwest and the officers "assign[ed] to Plaintiffs all of their rights, remedies, titles and/or interest in and to any and all claims and/or causes of action against Hiscox . . . , arising from the facts and circumstances regarding" the Second Action. (Stip. at 4; *see also* Compl. ¶ 47.) On July 25, 2022, the court entered the judgment accordingly. (*See* Compl. ¶ 48; Dkt. 13 Ex. 3 [Judgment].[2])

Then on August 11, 2022, Plaintiffs filed this action against Hiscox based on the assignment from Midwest and its officers. (*See* Compl. ¶ 49.) Plaintiffs allege that Hiscox breached its contractual obligations to defend and indemnify under its policy with Midwest, (*see id.* ¶ 65), and breached the implied covenant of good faith and fair dealing by not "conduct[ing] a prompt and full investigation of the facts and circumstances giving rise to the claims asserted in the [Second Action] before denying coverage and refusing to defend," (*id.* ¶ 73). Hiscox subsequently removed the action from the Superior Court. (*See* Notice.)

## III.  LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). A federal district court has jurisdiction over a civil action removed from state court only if the action could have been brought in the federal court originally. *See* 28 U.S.C. § 1441(a). A court has diversity jurisdiction, moreover, when more than

---

[2] The judgment in the Second Action is judicially noticeable. "The court may judicially notice a fact that is not subject to reasonable dispute," so long as it "(1) is generally known within the trial court's territorial jurisdiction[,] or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The decisions of state courts are typically subject to notice. *See Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971). Further, the parties have referenced the contents of the judgment throughout their filings, (*see, e.g.*, Compl. ¶ 48; Opp. at 5), to which none has objected.

$75,000 is in controversy and the citizenship of each plaintiff is different from that of each defendant. *See* 28 U.S.C. § 1332(a). When a case is removed, the burden of establishing the propriety of removal falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

## IV. DISCUSSION

The parties' dispute over the motion to remand centers on whether it is possible to aggregate Plaintiffs' claims against Hiscox to meet the amount-in-controversy requirement for jurisdiction. Typically, aggregation is "permissible only '(1) in cases in which a single plaintiff seeks to aggregate two or more . . . claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.'" *Gibson v. Chrysler Corp.*, 261 F.3d 927, 943 (9th Cir. 2001) (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). No single plaintiff's claims total $75,000, so only if Plaintiffs bring their claims upon a "common and undivided interest" meeting the minimum could jurisdiction exist. At least with respect to the assignment of the $500,000 in attorneys' fees from the stipulated judgment of the Second Action, a common and undivided interest indeed exists.

In determining whether an interest is common and undivided, "the proper focus . . . is not influenced by the type of relief requested, but rather . . . depend[s] upon the nature and value of the right asserted." *Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir. 1977). Given "the source of plaintiffs' claims," if they "are derived from rights that [plaintiffs] hold in group status, then the claims are common and undivided. If not, the claims are separate and distinct." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) (citation omitted). "[Q]uestions of fact and law common to the

group" of plaintiffs are not enough. *Id.* (citation omitted). "Only where the claims can strictly 'be asserted by pluralistic entities as such' or, stated differently, the defendant 'owes an obligation to the group of plaintiffs as a group and not to the individuals severally,' will a common and undivided interest exist." *Id.* (citations omitted). Thus, if the plaintiffs' claims "are each cognizable, calculable, and correctable individually," they do not share a common and undivided interest. *Gibson*, 261 F.3d at 945. But if they "cannot normally bring suit individually," *id.* at 944, or "[r]ecovery by one plaintiff . . . would . . . , as a legal matter, either preclude or reduce recovery by another," *id.* at 945, their interest is common and undivided. *See Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 41 (1911) (concluding that the claim "was single and undivided" because "neither [party] can enforce [it] in the absence of the other").

"[T]he 'paradigm cases' allowing aggregation of claims 'are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res.'" *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 959 (9th Cir. 2001) (citation omitted). Similarly, shareholder claims for breach of fiduciary duty are typically aggregable. *See Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985). The breach "is a direct injury to the corporation and only an incidental injury to its shareholders," and shareholders can bring suit in a "derivative" but not an "individual capacity." *Id.* at 545–46.

In this light, the $500,000 in attorneys' fees that Plaintiffs seek to recover satisfy the amount-in-controversy requirement. To start, those fees, if common and undivided, would be sufficient for jurisdictional purposes. "The amount in controversy includes" not only "the amount of damages in dispute" but also any "attorney's fees, if authorized by statute or contract." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). The fees here are contractual in nature. While each of Plaintiffs may have had a statutory

right under the CCRAA to fees as part of actual damages in the Second Action, *see* Cal. Civ. Code § 1785.31(a)(1), they bring their claims in *this* action under the assignment of Midwest's claims under its policy against Hiscox.  And the fees plainly exceed the $75,000 minimum.  *See* 28 U.S.C. § 1332(a).

Further, Plaintiffs' claims for the fees are not "cognizable, calculable, and correctable individually," so they are suing on a common and undivided interest.  *Gibson*, 261 F.3d at 945.  Again, "the nature . . . of the right[s] asserted" in *this* action derives from the assigned contractual claims against Hiscox, *Snow*, 561 F.2d at 790, which allegedly included indemnification for the fees in the Second Action.  And the fees appear to have been awarded as a lump sum to Plaintiffs as a group.  The judgment and the associated stipulation provided Plaintiffs "'$500,000 in attorney's fees and court costs"—neither allocated that sum in any way.  (Stip. at 4; *see also* Judgment ¶ 6.) Tellingly, this phrasing stands in stark contrast to the stipulation on damages, which provided that Plaintiffs were individually entitled to $8,999 each.  (*See* Stip. at 4.) Because the fees are a lump sum for the unified effort of representing Plaintiffs in the Second Action, were a single plaintiff to sue separately, that claim could not "be adjudicated without implicating the rights of everyone involved.'" *Ford Motor Co./Citibank (S.D.)*, 264 F.3d at 959; *see also Phx. Ins. Co. v. Woosley*, 287 F.2d 531, 532–33 (10th Cir. 1961) (concluding that insurance claims by the insured and partial assignees who had cross-assigned their interests could be aggregated); *Mfrs. Cas. Ins. v. Coker*, 219 F.2d 631, 633 (4th Cir. 1955) (concluding that claims arising under a single insurance policy could be aggregated because they together exceeded the coverage amount and "no part of this coverage [wa]s allotted to any individual claim").  The interest in the fees is thus common and undivided.

Accordingly, Plaintiffs' claims for the attorneys' fees may be aggregated to meet the jurisdictional minimum, the fees exceed that minimum, and remand is unwarranted.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **DENIED**.

DATED:    December 22, 2022

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE